**FILED**
MAR 07 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| ABRAHAM SANDAL, | CIV 05-4002 |
| Plaintiffs, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| WAL-MART # 1535, | |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

In this action, which was removed from South Dakota State Circuit Court, Plaintiff, Abraham Sandal, alleges racial discrimination by virtue of a hostile work environment in violation of S.D.C.L. § 20-13-10, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. Defendant, Wal-Mart #1535, has moved for summary judgment on all of Plaintiff's causes of action. For the reasons set forth below, the motion for summary judgment is denied.

## DISCUSSION

<u>Principles of Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City*

*of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Eighth Circuit has observed that "summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based." *Hindman v. Trankskrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998), *quoted in Kells v. Sinclair Buick-GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000).

## FACTUAL BACKGROUND

Plaintiff is a black male who was born in Ethiopia. Although Plaintiff has lived in the United States for over twenty years, his deposition transcript evidences a use of broken English. Wal-Mart hired Plaintiff to work in its Sioux Falls South Dakota store on April 6, 1995. Plaintiff has worked at Wal-Mart as a night stocker or night receiving clerk, and has worked in various departments of the store. Plaintiff received Defendant's Employee Handbook, and signed an acknowledgment of the receipt of the handbook on March 22, 2001. The anti-discrimination provision in the Employee Handbook provides in part:

> Wal-Mart expects its Associated to treat their colleagues and subordinates with respect and dignity and to fully support Wal-Mart's objectives of providing equal opportunity employment and maintaining a workplace free of harassment of any kind.
>
> Our commitment to equal opportunity for all Associates is reinforced by policy and by actions. We do not tolerate discrimination of any kind. Not only is discrimination against our beliefs, it's against the law.
>
> You may have worked for companies where supervisors and managers were "bosses." Here, your supervisor or manager is your coach. They are here to help by assisting you with training and resolving issues that affect your job.
>
> Our Managers have been selected and trained in the technical aspects of their job. They are also accustomed to working with general management and people issues. They know the business and know the value of open communication. The caliber of our Management tea is respected throughout the industry.

The Open Door provision of the Employee Handbook, which is included in Defendant's Exhibits, provides as follows:

> Our Open Door Policy says that if you have an idea or a problem, you should go to your Supervisor to talk about it without fear of retaliation. Faster resolution may occur when the Associate goes through the immediate Supervisor first. However, if the Associate feels the Supervisor is the source of the problem, or if the problem has not been addressed satisfactorily, the Associate may go to any level of management in the Company. Remember, while the Open Door promises that you will be heard, it cannot promise that your opinion will always prevail. Any Suppression of, or retaliation for using the Open Door Policy by a Supervisory Associate may result in disciplinary action, up to and including termination.

A portion of the Employee Handbook, which is included in Plaintiff's Exhibits, provides as follows:

> All allegations of harassment/inappropriate conduct will be investigated. Confidentiality will be maintained to the extent that is practical. Appropriate action will be taken to eliminate such conduct and to ensure there will be no recurrence of the conduct. If you, or someone you work with, have been a victim of harassment or inappropriate conduct, you should immediately report the offensive conduct to a salaried member of management. You may also contact your Regional Personnel Manager, the People Group, or the Ethics Hotline (1-800-WMETHIC).

After Plaintiff was employed at Wal-Mart, Brian McClain began working at Wal-Mart. McClain has never been part of Wal-Mart's management. In 1995, after McClain began working at Wal-Mart, and when Plaintiff was in the pets department, McClain called Plaintiff a monkey, said that Plaintiff was in his area, and said that the pet food was Plaintiff's food. Plaintiff reported to his supervisor, Scott Ferguson, what McClain had said to him. Ferguson told Plaintif he would "take care of it." McClain continued to call Plaintiff a monkey and also called him "stinky." The name calling continued into 1996, and Plaintiff testified that he reported the same to a night manager whose name he does not now recall. This manager also told Sandal he would "take care of it." When Plaintiff had a follow-up conversation with this manager a month or two later, the manager said, "[W]ell, I am going to talk to other management people, and I will mention about

3

this."

In 1997, McClain continued to call Plaintiff a monkey and say that he was stinky every two to three days. Also, in 1997, after Plaintiff and Plaintiff's Ethiopian friend left the break room to go to the smoking break room, they returned to find cigarette butts and ashes in their coffee and their food. Plaintiff reported this incident to the night assistant manager, Josh, who advised that he would talk to the manager and come up with a solution. Plaintiff heard rumors that McClain and another employee had put the cigarette butts and ashes in his coffee and food.

In 1998 and 1999 Plaintiff McClain continued to call Plaintiff monkey and stinky. In 2000, before Plaintiff left to go back to Africa, McClain told him to bring him back a monkey from Africa. Plaintiff also testified that Wal-Mart employee friends of McClain, whose names Plaintiff does not know, started calling Plaintiff names when they were with McClain.

The name calling by McClain continued in 2001 and 2002. Although Plaintiff could not name the person to whom he reported the name calling, he testified, "Well, usually I reported, but I don't – as I said, I don't specify them." In 2003, McClain and a friend of his, Chad Meineke, jumped like monkeys and made monkey noises on ladders in Plaintiff's presence. Plaintiff testified that he told an assistant manager named Bob of this incident. Plaintiff testified that Bob appeared to be mad when Plaintiff told him of the incident.

Plaintiff also testified as follows regarding another incident that happened in the electronics department in 2003 when Plaintiff was talking with his friend, Dave Daniels:

> Brian McClain come down there. He called us sort of monkey jumping, something. And Dave Daniels replied whom you calling monkey. And he repeated whom you calling monkey. And he say, Dave, no, no, it's not you. It's Abe. No, no, Dave, it's not you. It's Abe.

After this incident, Plaintiff found his supervisor, Jim Titus, and told him what McClain had called him, and that it had happened on other occasions. Plaintiff also told Titus that McClain, on other occasions, had told him: "[Go]o back to Africa. This is not your place. ... Go back to the forest." Titus told Plaintiff he would talk to McClain. Titus then reported to Plaintiff that McClain was crying, was sorry, and had said that he was just joking. Plaintiff testified that McClain then stopped making racial slurs to Plaintiff.

Plaintiff filed a charge of racial discrimination in July of 2003. Plaintiff testified that prior to filing the charge of racial discrimination, he had spoken to the manager, Ted Walnorfer. Plaintiff testified:

> Before I told to Jim and Jim didn't - in my recollection, he didn't done anything, so I went to Ted. I told him, what can I do. It's happening to me, this kind of thing. As you know, McClain is calling me those things for several times, but still he is - he called me. I talked to Jim, what are you going to say. [Ted said] Abe, don't worry about it, I will take care of it.

### Whether the Sioux Falls Human Relations Commission's Determination of Probable Cause is Admissible in Determining Whether Defendant is Entitled to Summary Judgment?

In his resistance to Defendant's motion for summary judgment, Plaintiff has submitted as Exhibit 3, the 10-page probable cause determination of the Sioux Falls Human Relations Commission. The probable cause determination contains a portion entitled "Investigative Findings of Fact," which sets forth 19 paragraphs of factual findings made by the Commission. Defendant contends that "as a matter of law" Plaintiff cannot oppose summary judgment by the "hear say statements" in the probable cause determination. Doc. 23, p.1.

In *Johnson v. Yellow Freight System, Inc.*, 734 F.2d 1304, 1309 (8th Cir. 1984), the Eighth Circuit Court of Appeals cited *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976), as support for the principle that administrative findings made with respect to claims of racial discrimination are admissible under Fed.R.Evid. 803(8)(C) in a federal trial. The Eighth Circuit held, however, that it was within the discretion of the trial courts to admit or not admit EEOC reports. The Eighth Circuit explained:

> EEOC determinations are not homogenous products; they vary greatly in quality and factual detail. The trial judge correctly may perceive a danger of unfair prejudice to the defendant or properly may consider that time spent by the defendant in exposing the weakness of the EEOC report would add unduly to the length of the trial. Moreover, the trial judge properly may give weight to the hearsay nature of the EEOC report and to the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness.

*Johnson v. Yellow Freight System, Inc.*, 734 F.2d at 1309.

The probable cause determination of the Sioux Falls Human Relations Commission in this

case contains a detailed "Investigative Findings of Fact" which followed an apparent thorough investigation. *Cf. Abebe v. City of Waterloo, Iowa*, 2000 WL 34030862 (N.D. Iowa, unreported in F.Supp.2d)(district court finds EEOC determination is sufficiently conclusory to warrant its exclusion); *Phan v. Trinity Reg'l Hosp.*, 3 F.Supp.2d 1014, 1017 (N.D. Iowa 1998)(district court excludes evidence of Iowa Civil Rights Commission after concluding that administrative findings were not simply cursory, but altogether absent).

Although this Court acknowledges that "the inability of the defendant to cross-examine the report in the same way that a party can cross-examine an adverse witness" may be problematic in a trial setting, the admission of the evidence in issue is presented in a summary judgment setting. In this setting it is not the Court's function to weigh the credibility and persuasiveness of the evidence, but it is the Court's function to determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Based upon the nature of the "Investigative Findings of Fact," the Court will consider this portion of the Sioux Falls Human Relations Commission's report as one of the items in the record to be considered in determining whether summary judgment is appropriate in this case.

## WHETHER DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT?

The elements for an actionable claim under Title VII for hostile environment harassment by a non-supervisory co-worker are: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a causal nexus between the harassment and membership in the protected group; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Quick v. Donaldson Co., Inc*, 90 F.3d 1372, 1377 (8th Cir. 1996). The same elements apply in actions for hostile environment harassment by a non-supervisory co-worker under 42 U.S.C. § 1981 and S.D.C.L. § 20-13-10. *See Elmahdi v. Marriott Hotel Services, Inc.*, 339 F.3d 645, 652 (8th Cir. 2003)(42 U.S.C. § 1981); *Huck v. McCain Foods*, 479 N.W.2d 167, 169 (S.D. 1991)(sexual harassment under S.D.C.L. § 20-13-10). Defendant contends it is entitled to summary judgment because Plaintiff has failed to establish the fifth element for an actionable harassment claim. Defendant, citing *Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir. 2004), contends that Plaintiff's harassment

claims fails as a matter of law because Plaintiff failed to take advantage of Defendant's corrective opportunities.

The Eighth Circuit Court of Appeals has held that in cases involving hostile environment harassment by a non-supervisory co-worker, "employees have some obligation to inform their employers, either directly or otherwise, of behavior that they find objectionable before employers can be held responsible for failing to correct that behavior, at least ordinarily." *Whitmore v. O'Connor Management, Inc.*, 156 F.3d 796, 800 (8th Cir. 1998); *See also Jacob-Mua v. Veneman*, 289 F.3d 517, 523 (8th Cir. 2002)(summary judgment for employer where "record does not indicate [Plaintiff's] supervisor or employer should have known of any racial harassment").

In his deposition, Plaintiff testified that he complained of the harassing behavior to his supervisor, Scott Ferguson, in 1995. Plaintiff testified that in 1996 he complained of the harassing behavior to a night manager whose name he does not now recall. Plaintiff testified that in 1997 he reported a harassing incident to the night assistant manager, Josh. Plaintiff testified that in 2001 and 2002, "Well, usually I reported, but I don't – as I said, I don't specify them." Plaintiff testified that in 2003, he told an assistant manager named Bob of an incident where McClain and a friend of McClain, jumped like monkeys and made monkey noises on ladders in Plaintiff's presence. Plaintiff testified that again in 2003, he complained of racial slurs to his supervisor, Jim Titus. Plaintiff further testified that prior to filing the charge of racial discrimination, he had spoken to the store manager, Ted Walnorfer, regarding the harassment.

In addition to Plaintiff's testimony, the "Investigative Findings of Fact" set forth that Plaintiff complained to Assistant Manager Rewee in 2002, and that in March of 2003, an Assistant Manager Hirsch was aware of Plaintiff's allegations. The "Investigative Findings of Fact" also state that Plaintiff complained to Co-Manager Hagerty of harassment that occurred in front of customers on October 21, 2003.

Although the Employee Handbook refers to alternatives to reporting to one's supervisor or a store manager, neither the Handbook nor Eighth Circuit law mandates that all the alternatives be utilized. In addition, the Handbook requirement to "report the offensive conduct to a salaried member of management" applies to the supervisors and coworkers of Plaintiff who were aware

of the harassing conduct. In Paragraph 19 of "Investigative Findings of Fact," it is reported that Store Manager Walnofer stated that "store policy dictates that when reports of discrimination are made, assistant managers are directed to bring it to the store manager's attention. Walnofer states that assistant managers should have reported incidents to him, but Walnofer believes that Assistant Manager Titus and others probably thought they could handle it." Although Plaintiff contends he advised Walnofer of the harassment prior to filing the charge of racial discrimination, Walnofer contends that he first became aware of the allegations when he was served with the complaint of discrimination by the Sioux Falls Human Relations Commission.

In light of the evidence regarding the ongoing nature of the alleged harassment and the number of supervisors to whom Plaintiff complained regarding the alleged harassment, a genuine issue of material fact exists with regard to whether the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (doc. 16) is denied.

Dated this 7th day of March, 2006.

BY THE COURT:

*[signature]*
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *[signature]*
          DEPUTY